**Pages 1 - 11**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK, JUDGE

FINJAN, INC.,

Plaintiff,

VS.

ESET, LLC, et al.,

Defendant.

**No. C 16-3731 JD**

San Francisco, California
Thursday, January 26, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
KRAMER, LEVIN, NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, California 94025
**BY: LISA KOBIALKA, ESQUIRE**

For Defendant:
FOLEY & LARDNER LLP
3579 Valley Centre Drive, Suite 300
San Diego, California 92130
**BY: JOSE L. PATIÑO, ESQUIRE**
**JUSTIN E. GRAY, ESQUIRE**
**NICOLA A. PISANO, ESQUIRE**

Reported By: Katherine Powell Sullivan, CSR #5812, RMR, CRR
Official Reporter - U.S. District Court

**Thursday, January 27, 2017** **10:13 a.m.**

**P-R-O-C-E-E-D-I-N-G-S**

**---000---**

**THE CLERK:** Calling civil 16-3731, Finjan Inc. versus ESET LLC.

Counsel, please state your appearances for the record.

**MR. PATIÑO:** Joe Patiño, Foley and Lardner, for the defendants ESET LLC and ESET SPOL. With me is my colleague Justin Gray. And also in the courtroom is Nicola Pisano.

**THE COURT:** Okay.

**MS. KOBIALKA:** Good morning, Your Honor. Lisa Kobialka, from Kramer Levin, on behalf of Finjan. And in the court with me are the officers of Finjan, Phil Hartstein and Julie Mar-Spinola.

**THE COURT:** All right. So let's talk about San Diego. Let me start with you, Mr. Patiño. Patiño?

**MR. PATIÑO:** Patiño, that's right.

**THE COURT:** What do you-all do down in San Diego? What happens down there?

**MR. PATIÑO:** Let me -- the motion to change venue is going to be handled by Mr. Gray. So I'll --

**THE COURT:** Okay.

**MR. PATIÑO:** -- defer to him.

**THE COURT:** Yes.

**MR. GRAY:** Good morning, Your Honor.

**THE COURT:** So what is -- what does your client do down in San Diego?

**MR. GRAY:** Well, my client is an antivirus company. And, as we explained in the briefing, we have about 200, plus or minus, employees, the vast majority of which are down in San Diego. And folks down in San Diego do a variety of things, including sales, marketing and technical aspects relating to the products.

**THE COURT:** Okay. Now, just give me some more detail about that. So what exactly are they doing specifically with the accused products?

First of all, let me ask you -- let me just do this: Do you have any other offices in the United States?

**MR. GRAY:** ESET LLC I do not believe has any other offices. Nor does ESET SPOL.

**THE COURT:** Okay. So the only physical presence in the U.S. is in Southern District of California; right?

**MR. GRAY:** Yes.

**THE COURT:** All of your employees except -- most of your -- 99 percent of your employees are there. You have one person up here who works remotely or something like that?

**MR. GRAY:** Right. There is one person in Northern District of California. I wouldn't say that there's 99 percent of our people are down there, but I think it's at least 188 out of roughly 200.

**THE COURT:** It's the center of gravity.

**MR. GRAY:** Yes.

**THE COURT:** Okay. And the accused products for the United States are all handled through that office in San Diego; is that right?

**MR. GRAY:** Yes.

**THE COURT:** Sales, marketing, customer service, all that's handled down in San Diego?

**MR. GRAY:** Yes.

**THE COURT:** For the accused products?

**MR. GRAY:** Yes, to my knowledge.

**THE COURT:** And is there any research? What else is going on? R&D?

**MR. GRAY:** My understanding is that we have a number of individuals in San Diego that are doing antivirus research.

**THE COURT:** On the accused products?

**MR. GRAY:** Yes.

**THE COURT:** All right. Now, I have looked at Judge Bencivengo's order. And she did not -- contrary to my earlier impression, she did not rule on the 1404 factors. She just ruled on first to file. So I know she has a passing mention, but she specifically said she was not holding on 1404.

Now, so, Ms. Kobialka -- did I get that right?

**MS. KOBIALKA:** Yes, you did. Thank you.

**THE COURT:** What's wrong with San Diego? It's a

lovely courthouse. You have that beautiful new courthouse. It's done in light woods. And they've got fresh air.

(Laughter)

**THE COURT:** Not like this place. What's wrong with being in San Diego?

**MS. KOBIALKA:** Well, Finjan has a number of cases. And I can update you in terms of --

**THE COURT:** I know they do.

Let me just jump in on that. I appreciate that point, but it doesn't really matter. They are not consolidated. They are not going to be consolidated.

As much as I hold my colleagues dear and respect them, whatever they do is not going to decide what I do. And vice versa. So the fact that there are other cases that are not in any way connected with this one doesn't really add up as a venue factor.

What you really should be focusing on are the main factors for 1404. Convenience of the witnesses. Center -- and particularly what I want you to focus on is the center of gravity in this IP case, okay. Meaning, where were the accused products handled, sold, marketed, developed researched.

That all seems to be San Diego. And all the folks that your opponents designated as witnesses in the U.S., party witnesses, are all in San Diego. I understand there are a bunch of people in the Slovac Republic.

**MR. GRAY:** That's right, Your Honor.

**THE COURT:** So it's as easy to get to San Diego -- from the Slovac Republic to San Diego as it is from San Francisco.

**MS. KOBIALKA:** Well, they have a number of people that they've listed just all throughout the United States. I don't think it was just limited to San Diego.

**THE COURT:** No, I agree. But their party witnesses, meaning the people on their team in-house, that they're going to put up, are all in San Diego. Everyone else is scattered in Texas.

Nobody is here except a few Finjan folks.

**MS. KOBIALKA:** Well --

**THE COURT:** The documents, the people. And, more importantly for the IP case, where all the action happened is down in San Diego.

**MS. KOBIALKA:** Well, if they're not going to challenge us on invalidity, they're not going to be interested in the files because there's been substantial IPRs in other Patent Office, and not interested in seeking any kind of discovery from Finjan regarding those other litigations because there's a significant amount of documentation, all of which is here, they are not interested in seeing our products which practice the patents, they don't want to see the source code, they don't want to see all this information that Finjan itself has because

it is an operating company with just one lawyer, a number of engineers and other folks that are all here in east Palo Alto, then maybe that's a different discussion. I suspect, though, that that's not going to be the case.

And what we have experienced, and I anticipate ESET is going to do as well, just based on what we're seeing already in discovery, is that they're going to want all of this information. And they're going to want all the witnesses who are located, you know, with Finjan here in this particular district, and all of that documentation all of which is here in this particular district.

So it's not just limited to saying, well, all this is about is the accused products. If they're not going to bring an invalidity challenge, then maybe this is a different story.

**THE COURT:** I'm not really sure that's -- look. Everyone is going to be inconvenienced, okay. It's litigation. Everyone is going to be inconvenienced. We're looking for the net least inconvenience, okay. Everyone is going to fail something.

Where do we go where it's going to be the least impact on the most people? All right. And it's crystal clear under patent laws, and the way our district has interpreted patent venue -- choice of venue for transfer purposes, you go to the location of the legally operative facts.

The legally operative facts are going to be your

infringement contentions against the defendant. That's San Diego.

So of course they're going to take a look at -- let me just be clear. The price of transfer is not they're barred from maintaining invalidity. That's just not going to happen. That's not a reasonable request.

But, anyway, why don't you address the evidentiary issues your opponent raised.

**MR. GRAY:** Sure. I'll do that just briefly.

Yes, we will obviously be seeking discovery. And we have sought discovery from Finjan already. But I'd like to point the Court's attention to the Federal Circuit's *In re Genentech* case, which --

**THE COURT:** Yes, I have it right here.

**MR. GRAY:** Yes.

-- clearly states that the place where the accused infringer's documents are kept weighs in favor of transfer to that location. I'm not aware of --

**THE COURT:** You both are going a mile a minute. You need to slow down --

**MR. GRAY:** Sorry.

**THE COURT:** -- for the court reporter.

**MR. GRAY:** My apologies.

I'm not aware of any case law, either from the Federal Circuit or within this district, that supports what Finjan's

counsel was stating about the plaintiff's sources of documents and witnesses.

The case law you just stated is very clear that in patent infringement cases the center of gravity relates to where the accused products are, you know, developed, marketed, sold, et cetera.

**THE COURT:** Okay.

**MS. KOBIALKA:** Your Honor, may I address that?

**THE COURT:** Yes.

**MS. KOBIALKA:** So, you know, the reason why I was talking about all the information we have located here was because that is why the center of gravity is here.

And you can't just dispense with a patentee's choice of forum in patent cases. In fact, those are generally given a fair amount of consideration. We are being told we should just dispense with it.

To the extent he's citing the *Genentech* case and the convenience factors, that specific case was cited by Judge -- the judge in Southern District in connection with saying, I looked at the factors of convenience. And she cites *Genentech*. So I understand --

**THE COURT:** She did that in the context of first to file. And she was crystal clear in saying she was not ruling on a 1404 motion. You're not going to talk me out of that, because the documents rebut it.

I have to say also, I was concerned about Finjan's argument in your opposition about that nondisclosure agreement.

Your argument, which you haven't mentioned here today at all, somewhat surprisingly, but your argument in the brief was all about that nondisclosure agreement and the supposed agreement to locate all disputes in San Diego -- I mean, here in San Francisco. That's a misreading of that agreement. And I was concerned by that because I don't think that was at all fair construction in that location of litigation.

But I think your case cite is also wrong. As a colleague down the hall recently held, quote, The center of the accused activity is the district in which the defendant is alleged to have developed, tested, researched, produced, marketed and made sales decisions concerning the accused product, closed quote. That's *Synopsis v. Mentor Graphics Corp.*, 2013 WL 1365946 at *5, N.D. Cal 2013. That, in patent cases, is the center of gravity, not what the plaintiff may have.

So I am satisfied you ought to be in San Diego. So I am terminating the other motions, and I'm going to transfer you to San Diego.

And the transfer is going to be based on the fact that the center of gravity, in other words, the location of the legally operative facts in this case, which involves a patent infringement contention or allegation, that center of gravity is where the accused -- is the district in which the accused

conduct is centered. And that is based on the *Synopsis* quote that I just read.

And I also find that overall, while both parties will have some inconvenience, the net inconvenience is lower for the parties and for all the witnesses in the Southern District of California. And that's under *FastCap LLC v. Snake River Tool Company*, 2015 WL 6828196. That's *5 and *7. N.D. Cal. 2015.

I find that Finjan's main argument in its brief, that the parties agreed to locate the patent infringement suits in Northern District of California, is not borne out by the plain meaning of that stands delivery. I think I said nondisclosure. I think it was actually stands delivery.

**MR. GRAY:** That's right.

**THE COURT:** Whatever that agreement was.

That's the oral ruling from the bench. There will be no followup.

Enjoy San Diego. You can redo your motions down there.

**MR. GRAY:** Thank you.

**MS. KOBIALKA:** Thank you, Your Honor.

(At 10:25 a.m. the proceedings were adjourned.)

\- - - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, January 27, 2017

Katherine Sullivan

______________________________________________

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter